This is the time set for argument in Ani v. Bondi, Case 24-2339. Good morning, sir. Good morning, Your Honors. May it please the Court, Emmanuel Nwa, spelled E-N-Y-I-N-W-A. I'm preparing for Petitioner Daniel Ani. And if I may ask the Court, please, I tend to speak really fast when I get excited. If you just tell me to slow down, that helps me a little bit. I reset myself so that people can hear me properly. Anyway, good morning, Your Honors, and it's always an honor to be here before this Court. I've been here a few times, and I find this to be the reason why we go to law school, to get a chance to argue before judges in front of a big Court like this. So I take this privilege seriously. We filed two different 20-year jail letters, and I think that kind of framed the arguments for this morning. I just want to add a couple of small things to the issues that were already raised, which is that in reviewing the cases that address the FOSM doctrine, they almost always deal with situations where there's no corroborating evidence of the claim. And so, in other words, credibility is not really a big issue if there's evidence supporting the claim. And in this case, there were several pieces of evidence supporting the asylum claim the Court found. There was an article that the U.S. government actually took and had authenticated by the Library of Congress. The article contains my client's name in it as being one of the people who were arrested and persecuted. The Court said on the record that she can't really verify whether or not it's actually him, but she can't disprove it either. So what do we do with the marriage fraud, right? I mean, that's the crux of the issue is that, you know, your client, I guess, represented to USCIS that he was married. That turned out to be inaccurate. And then there was testimony in front of the IJ on that issue, and the IJ found that that was so problematic that she should therefore discredit all of his testimony. So why do you think that was mistaken? Well, so a couple of things. When I've done immigration law for 25 years, and I'm always shocked by how little people who deal with issues understand immigration law, especially marriage. Paying somebody to marry you is not a violation of immigration law, only if it's sole reason for the marriage. In other words, the fact that they say you paid me money to marry me is not a violation. In fact, I got married in Nigeria. I had to pay the family a substantial amount of money. So that by itself does not negate a marriage. We have two children. I've been married for 18 years. And so the lawyer who represented him should have simply said, we can submit other evidence that the marriage is real. They just never got a chance to do that because he walked in and was confronted with this affidavit. Counsel, am I understanding you correctly that you are now saying that the marriage – I know your client said this at one point. Are you really contending that the marriage was real? I'm saying that he never got a chance to prove it because – No, I understand that. But I'm just saying, is that your position, that it was real? It is. Because the wife, the alleged wife, said it wasn't real. Your client basically confessed that it was not real. And what we deal with is the maxim of falso in uno, falso in omnibus. And, you know, that's what we struggle with. Your client clearly lied about his marriage. And the question is, how much does that influence the credibility determination by the IJ? That is fair, Your Honor. I'll leave the issue aside to address the cases we cited. So all those cases address situations where the misrepresentation from zero to the claim. In this case, it would be a claim for asylum membership in a group that was pursued by the government. And so there's nothing about any lie about the marriage that affected any mature aspect of this case. What about the timeliness of the asylum claim? Because there it seemed that your client represented that he didn't seek asylum because of this. He believed he was in a bona fide marriage, and that then did come into the IJ proceedings. And it seems like it would be relevant to at least part of the claim. It is relevant. And, however, in immigration proceedings, it's not whether or not the application is actually proved true. It's whether or not at the time the application was filed there's reason to believe that it could give you a way to get status. In other words, if you reasonably believe that he was actually involved in the proceeding to get his documentation to a marriage, there's a waiver. Actually, it's called an exceptional circumstance. And so this is not based on whether or not the application is actually approved, because almost all cases where you enter the United States, someone files for you the time you're here waiting for that person to be adjudicated as excluded from unlawful presence. So in this situation, it wouldn't be a matter of whether or not it's approved ultimately, but whether or not at the time he filed it is all times of state. So this is how I can actually cite some case law on this, but I didn't expect to address it this morning. So is your point that, yeah, your client lied about it at one point, but this is not material. We should just put that aside and make our determination about the credibility of your client based upon potential evidence other than the lie about the marriage. Is that right? Well, the Folsom Doctrine cited by most of the cases I submitted the documentation to address this issue, they always say that it's in the context of real ID acts, which means it only comes in when there's no objective evidence of the claim for asylum itself. And so then his credibility becomes a central part of the case. In this case, there's just simply too much evidence of his membership in the group, and then all the Court said was I believe this documentation proves he is who he says he is. However, I don't take his testimony about what happened in the past as being true because I don't find him credible. However, the BIA said even if you didn't find him credible, you still have to look at the other evidence in the case. In this case, there was evidence about his father being a pretty strong activist during the war. He designed a bomb that, you know, that was used during the Civil War. There was also evidence of himself being arrested. There's an article in the newspaper that was authenticated that showed him involved in all these organizations. In fact, on remand, the Court also said that I believe that he's a member of the group. However, the Court did something interesting. It said, like, you can't prove that he was still persecuted now, which is not an inquiry as to whether or not he's a member of the group, whether or not there's reason to believe he's still persecuted. I mean, didn't the IJ kind of do what you're asking to be done? And it seems that, in fact, the case was remanded again kind of for that purpose to say, well, listen, he may not be credible in his account, but we're going to look at the other evidence and we're going to ask if that evidence supports the claim. And the IJ found that it didn't, finding that the news articles, for example, you know, did not show he would be targeted if he were to be returned to Nigeria. So, you know, I guess the question I have is, you know, where is the error in what the IJ did? Because the IJ seemingly did consider other evidence in the record and just found that it didn't support the claim in the absence of otherwise credible testimony. Well, the IJ did find that the documentation proved who he says he was. However, the document that the IJ also found that the documents themselves without reference to his description does not support what he said happened to him. And so the question is whether or not the IJ is correct in that analysis. Right. I mean, I guess, you know, perhaps the IJ could have found for your client and said, you know, I understand this issue with the marriage fraud, but notwithstanding that, there's a lot of other evidence out there that he was, he is who he says he is, he will be persecuted, and that maybe the evidence would have permitted that. But, of course, the review here is substantial evidence. So I'm asking, where does the record compel that, the opposite conclusion? Well, there's two issues. One, there was also a motion to remand that, you know, that was supposed to present more evidence of his likelihood of persecution. That motion to remand was also denied as well. And that motion to remand was not, was to allow him to present evidence of the leader of a group being arrested when he went back to Nigeria in 2000, I believe, 2022. And so that motion to remand was also denied. It was also appealed to the court here. So there was evidence of who he says he was. But what other evidence do you see? You have new evidence that you want to put on in the motion to remand. What difference would it make? Well, because the court felt that time had passed between the time he was persecuted and the present time, and the court felt like the passage of time made it less likely he would be targeted for persecution. And so the evidence showed that the leader of the group went back to the country and he was arrested and put in prison, been in prison since that time. And there was an awful lot of other persecution against members of the group. So is that leader of the group really comparable to your client? Well, that's the question. So the court said, well, even though we believe that members of the group get persecuted, without his particular testimony, he couldn't prove that he himself personally would be persecuted. And so this is why the false admission becomes central again, because the evidence of him being persecuted was presented quite extensively, including the article about himself. All this information was before the court in 2013. That was appealed to the BIA. BIA did not resolve that issue because BIA remanded on a different ground. And so that issue is not being appealed to the court. Counsel, as you well know, on a motion to remand, the new evidence, the alleged new evidence has to be material. How do you feel that the new evidence, in quotes, that you're presenting meets that standard? Well, so most cases that address motions to reopen don't address credibility motions to reopen. They allow the case to be remanded for the court to have a hearing to discuss whether or not there's evidence that he himself was personally targeted. You cannot prove that on a motion to remand because there's credibility to be an issue on a motion to remand. And so the false indoctrination also applies because if you find him not credible the first time, this is all the cases that I cited, if you find him not credible the first time, then you deny it on that basis as well. And so this is what happened here. But, Counsel, what I'm wrestling with here is you want a remand. And the evidence that you're presenting, characterized, I believe, as new, basically just seems to be the same thing over again. Maybe a reiteration, maybe a different time framework, but it doesn't seem to be new or material. What am I missing? Well, so the court found that he was a member of the group. The evidence supports the fact he's a member of the group. It supports members of the group who were persecuted. The court felt like he'd been out of the country for a long time, and so the passage of time made it less likely that he would be persecuted if he returns back to the country. So the new evidence is the fact that the leader of the group came back to the country and was actually abducted. And so there were several articles about members of the group being persecuted today. And is any of this evidence specific to your client? Well, there couldn't be because my client is here in the United States. And so the question, when the court made the finding, was not that he didn't come back to the country. Okay, let me slow down a little. So the court found that there was evidence that he was a member of the group. The court felt like too much time had passed, and so the members of the group were no longer being targeted. So the new evidence is showing that members of the group are being targeted in real time today. The articles are sent to the BIA, and so that's also part of the appeal. And I'd like to reserve a little time for Barbara, if I may. Sure. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Aaron Henricks for the Attorney General. I have on my day sheet Sarah Bird, but I guess you all have switched counsel on this. I apologize, Your Honor. There was a medical emergency. I'm stepping in for my colleague. Okay. Welcome. This Court should deny the petition because the record does not compel the conclusion that Mr. Ani established eligibility for asylum. In the case Jabril v. Gonzalez, this Court stated that in a post-Real ID Act world, the Court will overturn adverse credibility findings in, quote, only the most extraordinary circumstances. We do not have extraordinary circumstances in this case. As to the adverse credibility, the judge here reasonably found that the petitioner was not credible after the petitioner testified falsely before that same judge as to a material topic. And that ruling is perfectly consistent with the statute, the Real ID statute, and precedent on this question. In Harminder Singh v. Holder, that's the 638F3D1264 Singh v. Holder, the agency may reasonably find an asylum applicant not credible, even where his testimony is both internally consistent and consistent with the history of providing false information to immigration officials. The evidence before the immigration judge in this case. This is Singh v. Holder 643F3D, is that the one you're citing? We have a lot of cases by this name, so which one are you citing? I believe this one is 638F3D. 638, okay. Yes, thank you. Thank you. So the record before the immigration judge was not just a history of providing false information to immigration officials, but continued false testimony in front of that same immigration judge during his asylum claim. So what would have happened, you know, the immigration judge was inquiring about this, so he had seemingly two ways to go here. He could have either admitted that he had testified falsely before, or he could maintain that there was no false testimony before, and he took the second option here, seemingly. Did he have no way out on this? I mean, if he had done the first one and said, yes, I did testify falsely, it's hard to imagine that would have worked out well for him either. The REAL ID Act gives immigration judges broad authority to view the totality of their circumstances, including candor. And so I think there's an argument to make that if he had come forward and say, listen, I was lying about the immigration fraud or the marriage fraud, but here I am before you telling the truth. I think that increases his chances based on the totality of the circumstances. Of course, it's a difficult task given the four years of marriage fraud that preceded his asylum claim. One thing we've said, you know, there's been a few developments in the law over the years in this area. I mean, we've had this Falsus Maxim for a long time, and then we have the REAL ID Act. So I take it your position is the Falsus Maxim kind of continues post-REAL ID Act. Have we ever said that? Yes. Well, in so many words, I think yes. In Shrestha v. Holder, we note that the REAL ID Act did not, quote, including the requirement that the immigration judge's findings be reasonable, that they be based on specific and cogent reasons related to the petitioner, and that he provide a reasoned analysis. So to the extent that the maxim now operates in a post-REAL ID world, I think it's part of that totality of circumstances, and it would apply in a situation where the judge's analysis is really primarily focused on you said something false here, and therefore I'm going to find that your entire credibility is not correct or that your entire testimony is not credible. But, you know, I don't know if this case even requires the court to get into the intricacies of the maximum, given that, at least reading the IJ's decision, the false testimony in front of the judge is part of his decision, but it's only part. He also bases it on just the mere fact of marriage fraud, right? So it's not, oh, you're testifying falsely, therefore everything is false. It's I'm looking at the false testimony in front of me today, and I'm also looking at, you know, not testimony, but just a fact of four years of marriage fraud. We also have an alum, you know, we kind of made some adjustments to the single factor rule that we used to apply and said, well, we don't apply that anymore. How does that decision interact with what we have here? Well, I apologize, Ron. I'm not familiar with alum, but I will just say that we have multiple factors leading to the credibility analysis, and given that the false testimony and the marriage fraud is material and conscious, the decision before us is squarely in line with Ninth Circuit precedent and the statute of the Real ID Act. For example, in another Singh v. Holder, 643, facts very similar to this one present that one of the wife in that case made false statements about her husband's asylum claim, and the court realized it's totally irrelevant. It turned out to be irrelevant to her asylum claim, but, quote, what matters is that the petitioner chose to lie to immigration authorities, and that always counts as substantial evidence supporting an adverse credibility finding, unless the lie falls within a narrow exception that doesn't apply here. The same goes for the case N. Ying Lee v. Holder, where, again, a applicant for asylum, she lied about part of her asylum claim that was based on a forced abortion. Or, sorry, she lied about her religious claim, and then the judge there said, well, because you lied about that claim, I'm not going to believe you about your forced abortion claim. And I think a factor here that might be helpful is to realize that the separation between the marriage fraud and the asylum claim is not as strong as Petitioner would have us believe. In fact, the IJ says explicitly during the hearing the validity of his marriage directly impacts his eligibility for asylum. Is that because of the one-year bar issue or beyond that? I think beyond that, partially because of the one-year bar issue. But he also says that the continued misrepresentation increases the Court's skepticism about the validity of the asylum claim. And when you think about the context and the timeline of what was happening, it makes perfect sense. I mean, the Petitioner who moves to America in 2005, supposedly having just been persecuted in Nigeria, has two options. He can go through the – actually, it's not even a choice. He could have applied for both marriage change in status and for an asylum claim. But in his mind, he says, well, I viewed them as the same thing, so I went for the marriage. Well, the marriage turned out to be fraudulent. And so if the asylum claim was legitimate, I think it casts a lot of doubt on – or sorry, it casts a lot of doubt on the asylum claim, the fact that he chose to go the fraudulent route first and spend four years trying to exhaust the immigration appeal, a spousal abuse claim, and a district court case before going to the supposedly legitimate asylum claim. That sounds logical. Did the IJ say that, though? The IJ didn't state it explicitly, but the fact that he mentioned that the marriage fraud goes to the heart of the asylum claim and that the continued misrepresentation makes him question the validity of the asylum claim, I think it is part of the kind of narrative that the IJ is getting at when he's talking about his past and now continued lies based on that marriage. And it speaks to the earlier question of, well, why continue lying? Well, because if you fess up about the marriage fraud, it kind of puts that timeline into stark relief that if you had a legitimate asylum claim, why on earth are you spending four years committing immigration marriage fraud? And doesn't that get down to the totality of the circumstances review? I mean, it is true that the IJ found part of the petitioner's testimony about his past mistreatment was consistent, and that he testified to some degree in a believable manner. But the review of all of the actions taken, the four years, the continuing claim about marriage, and then only admitting that wasn't true to the degree he did when he had no other choice, it does undercut the circumstances. And under the totality of the circumstances review, it sounds to me like the IJ was certainly within rights to make the decision that was made. I think that's exactly right, Your Honor. And the IJ was not just finding things wrong with the petitioner's claim. He credited the petitioner for being consistent in his testimony about his treatment in Nigeria. Unfortunately, as the IJ noted, he was also consistent in his telling of the story of his marriage fraud. So in the judge's mind, the usual reliabilities of credibility were undercut because he was perfectly consistent in both the false story of his immigration and the allegedly true stories of his immigration, which forced the IJ to rely solely on the supporting documentary evidence. Well, what about the – there was, I guess, an article that specifically mentioned him. So what do you make of that? I think I make of it just what the IJ made of it, which is I've made an adverse credibility finding, and so your testimony doesn't hold weight, but I'm going to look at the article. The article comes out in 2010 and mentions his name in a brief part of a sentence saying that the petitioner escaped authorities or escaped arrest. There is no record evidence about how widely read this newspaper is. There's no evidence that the government was aware that this newspaper was published and knows about the article and saw his name. And importantly, it only provides evidence that he escaped arrest. His asylum claim is mostly based on an actual arrest and detention and alleged torture, but none of those are mentioned in the article. I don't even believe that the article supports the fact that he was a member of the party, just that he had attended an event once in 2004, I believe it was. What about the motion to remand? So the motion to remand, the question there is does the petitioner meet the heavy burden of showing that new evidence presented would likely change the result in this case? There is an ocean of difference between the petitioner and the individual named in the article. First, Kanu is a leader of an entirely different political group, the IPOB, not the Mossad. And so first it's a different group. Second, as the record shows, Kanu was a leader of a separatist group, not a member. He was a cult hero to hundreds of thousands of followers and part of an active armed struggle against the government. I mean, there's reporting that his group was accused of killing at least 60 people in 2021, most of them police officers. This is at page 71 of the record. So in contrast, the petitioner claimed to be just a member, even though the record evidence shows that really he just attended a meeting. That's all that the IJ can rely on, of a different separatist group. His last interaction with the group was in the 2000s, and he did not have a prominent role, was not accused of any violence, and has not been accused of being part of any violent resistance. And so the Board acted well within its broad discretion, and the Court should deny the petition for review as to his motion on remand. And... Counsel, in looking at cases like this, typically it's always the word of the petitioner. I was tortured. I was subject to abuse. We have no record of that. We actually have an article, and again, I don't know the name of the public, I don't know about the publication, but someone thought it important enough to single him out as someone who escaped arrest regarding support for this group. That's unusual that they have that kind of evidence. I mean, you're talking about the leader. Sure, Nelson Mandela was attacked all the time. Anyone else in the African National Congress name? Not usually. It was always about Nelson Mandela. How would this person ever prove a case except for their own testimony? And then I got this newspaper article. That seems a little bit unusual to me, to have that kind of newspaper, the acknowledgment in the newspaper that he was someone who was subject to at least attempted arrest. I agree that it is unusual in these types of cases, and if I can just quickly respond, I see my time is almost out. Go ahead, please, if that's okay. First, the article does not have – I mean, it is true that we often rely heavily on the credibility of these witnesses in these types of cases because the events happen in foreign countries that it is hard to judge whether they are true or not. I just am not seeing the connection between escaping in 2004 – escaping arrest, not being arrested – escaping in 2004, zero supporting record evidence from that moment until when he's applying for asylum. He's out of the country, though. Right, but there's no evidence that the government is looking for him. There's no evidence in the record that Mossab is even still a relevant player in Nigeria, aside from his incredible testimony. And so I acknowledge that it is a unique fact, but it does not – it certainly does not compel a contrary result in this case. So I would ask the Court to deny the petition, and we'd rely on our briefing on the waiver of the documentary claim. Thank you. Thank you. Briefly, Your Honors, and thank you once again for indulging me. Two quick things. So on the article, page 162 on the record, it was authenticated by the Library of Congress. It was sent by the judge to the government. The Court itself says that the government has authenticated the article, so there's no question about the credibility of the article itself. It's on page 162. I'm sorry I have the court record. So it was authenticated by the Library of Congress, so the article itself is objective. He made a comment about the fact he was consistent with the marriage and with the asylum, but that's exactly the reason why I think the Court has to look at this differently. With the marriage, there was evidence that it's not true. With the asylum, there's evidence that it is true. In fact, the consistency in the asylum is not just his testimony, but all the objective evidence support that. The reason why we believe he lied on the marriage is because all the evidence appears contradict that. And so if you look at both situations, actually, this is precisely the reason why all the cases that address this issue make distinction between any lie about something totally different from the asylum and lies about asylum. He made a comment about that. Right, but I mean, I think, you know, there's different types of lies, and in this case, the lie that we're talking about is a lie that was directed to immigration authorities, and here he is seeking immigration relief. So there is a connection between these, and I think you can appreciate why a fact-finder might question the testimony in light of what he had done in front of the U.S. CIS. I very strongly understand that, and I'm not trying to dismiss it or belittle it, you know. I was just pointing out the fact that I'm — and I'm looking at a B.A. decision from 2023, and it makes it very clear that it says here, the record contains evidence that respondents were supportive of MASAB, and that based on the organization and that such a party faced risk of harm from Nigerian government, the board's decision. The board last year found the same thing, that it's a member of the organization that faced fear. And so the fact there's new evidence that members of MASAB have renewed sense of fear is exactly what the case was remanded for. And he makes a comment about IPOC. The B.A. itself finds that Nandu Khan is also the head of MASAB. It says it right there on page 3 of the decision. It talks about him being — when he got arrested last year. So there's evidence that he's faced future fear based on what happened to the leader. There's also evidence that — to supporting members in the group. Those were not in dispute. So the reason why the FOSM doctrine becomes important in this case is because in a situation like this, when there's all the evidence in the world that he's a member of the political organization, that he was persecuted for that reason, the marriage itself should not be the reason why the case should be denied. In fact, all the cases that I cited say exactly that. So there's no case that supports the finding that lying in the marriage context should be used as a basis to deny asylum. That's all the time that I have. Okay. Thank you, Your Honor. Thank you very much. We thank both counsel for the helpful briefing and arguments. And this case is submitted.
judges: SMITH, BRESS, Morris